Good morning. I'd like to call case number 15-1859, James Scott et al. v. Officer Kevin Reif, Lt. Ray Collins, and Jeans Towing, Inc., Appelese. Oral argument not to exceed 15 minutes for plaintiffs, 15 minutes to be shared by the defendants. Howard Yell Letterman, you may proceed for the appellant. And for the record, Howard Letterman, appearing for the appellant. I will argue that the Rooker-Feldman doctrine does not apply to this case. I will argue that Ray's judicata does not apply to this case. Those will be my main two arguments today. Regarding Rooker-Feldman, law has changed in recent years. In the ExxonMobil Corporation v. Saudi Basic Industries Corporation in 2005, the U.S. Supreme Court tightened the doctrine considerably. And this court has recognized that fact in Coles v. Granville 448 F3D 853 and 857, a 2006 case. Basically, this court said that Rooker-Feldman has only limited application. In another case, McCormick v. Braverman 451 F3D 382 at 393, a 2006 case, this court said that the pertinent inquiry after Exxon is the source of the injury the plaintiff alleges in the federal complaint. And the court went on. If the source of the injury is the state court decision, then the Rooker-Feldman doctrine would prevent the district court from asserting jurisdiction. If there is some other source of the injury, such as a third party's actions, then the plaintiff asserts an independent claim. There are a few other exceptions to the Rooker-Feldman doctrine, and one of them is relevant here. And the ExxonMobil court itself recognized this at page 293. If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion. If we look at the original district court complaint here, there is no mention of the state court decisions. The source of the injury is defendant's acts alone. The complaint contains, by my estimate, 10 of the 11 claims that plaintiffs sought to add to the district court decision by complaint amendment. No mention of the dismissed claims. When we look at the dismissed claims, basically what the state court did with the Mandamus claim was simply say that Mandamus was an improper remedy in that situation because it was an actual dispute over whether defendants had possession of the property. You should probably move on to the Rays-Judicata because I think that's the issue you really have more problems with. I will, but Rooker-Feldman does impact on Rays-Judicata. Just to conclude, the Rooker-Feldman does not apply here because the source of the injury is not any state court decision. Looking at Rays-Judicata, yes, I do have problems there. That's true. There are three parts to it. The focus here is whether plaintiffs could have litigated the federal court claims in state court. That's the focus. If you look at, it is true that on this subject, plaintiffs have asserted MCR 3.301 special proceeding rule as opposed to the MCR 2.203A general proceeding rule among the Michigan rules. We don't read that rule, the special proceeding rule, as totally under MCR 2.203A. Second of all, while it's true that the court decided, the state trial court decided the mandamus claim on the merits, it did so in a way that does not affect the claims that plaintiffs seek to raise in federal court. The mandamus decision and its basis are totally separate from the claims that plaintiffs seek to raise in federal court. In our brief, we have distinguished the Wurmsbacher and Amburgey decision. We don't believe either of those courts have ever addressed the MCR 2.116I-5 situation. They only addressed the MCR 2.118A-2 possible reasons, mainly undue delay here. Amburgey concluded that because the trial court had already issued the summary disposition decision, the motion to amend came too late. As a matter of policy, what the court is saying is that a party must anticipate claims in response to a motion for summary disposition. But the court didn't squarely interpret the scope of MCR 2.116I-5, which basically mandates under MCRs 2.116, 8, 9, or 10, the court must give a nonmoving party an opportunity to amend. The position is that in that respect, MCR 2.116I-5 restricts rejudicata because plaintiffs did try... If there isn't a precedent question as to whether you should have joined with the mandamus action, the present claims, the mandamus rule allows you to do that. You can join claims with an action for a writ of mandamus. There would have been concurrent jurisdiction over the 1983 and the civil RICO claims. Regardless of whether the court acted improperly in not allowing you to amend, or even unfairly, aren't you caught by the rule that would have allowed you to join with your mandamus action claims that you wanted to have heard later? A good question. I will respond this way. Okay. Under MCR 2.116I-5, a motion to amend. You're right. Plaintiffs could have, from the beginning, asserted all 11 claims, including the mandamus claims and all the others. Nothing stopped them from doing so. I think that's the best way I can answer your question. Again, the last chance to do that was through MCR 2.116I-5, the motion to amend. We submit that the state courts have misread and misapplied that rule. Do you have a case that would say that even if you had a preliminary opportunity to join those claims, whether or not res judicata applies depends upon whether you were denied the last opportunity? No. AMBERGY has cut off litigation in this area. Basically, what it's done is... Mr. Lederman, I didn't hear. Can you repeat your last sentence? You said something has cut something off. All right. Okay. I'll repeat it. Sure. Basically, the AMBERGY decision has cut off litigation in this area. So I don't have a case published or unpublished. If I had an unpublished one, I could not cite it to you as finding precedent. As far as I know, my position has not arisen in appellate court litigation in terms of the intersection between MCR 2.116I-5 and res judicata. Mr. Lederman, your ten minutes is up. All right. You can finish your thoughts. Go ahead. Basically, res judicata does not apply here because under a proper reading of the applicable court rules, the last chance for plaintiffs to raise, litigate, and resolve their claims here was through the motion to amend, which the state courts wrongly denied. Thank you. Mr. Curlew? Yes. Thank you. Good morning to the panel. This is Douglas Curlew on behalf of Officer Reif, the Redford Defendant. I will be very brief. I believe this case is very straightforward, particularly the res judicata argument. Michigan, like the federal courts themselves, is a state court. It follows the broad rule that any claim that could have been brought has to be brought in that suit or it would be res judicata against the subsequent attempt. Certainly, we've laid out in our brief that the claims that were asserted could have been brought. In fact, the plaintiff's appellant's own brief is basically a concession that under MCR 3.301, which also incorporates 2.203, they certainly had the freedom to have brought all the various claims that they now seek to assert in the district court in their original mandamus action in the Wayne County Circuit Court. I don't think any more needs to be said. Was Redford a defendant in the state court? Redford itself was not a defendant in the mandamus action, but as we cited in our brief, there are a host of opinions both from the state of Michigan and from the Sixth Circuit that there is privity for purposes of res judicata between a government employee and his employer. How can there be privity on a 1983 claim if the whole Monell Doctrine says that there's no respondeat superior liability, that the liability of the municipal defendant has to be direct? It has to be something that's either a policy of practice of the municipal defendant. How can you have that privity relationship in a 1983 claim? You have that relationship because even though there is no respondeat superior or no vicarious liability, the liability of the city remains contingent on the fact that there has to be a finding of liability on the part of the individual official. In other words, there has to have been some wrongful act the individual officer did that then resulted from a policy of the city. But unless and until there is that original act, and I would cite, I don't remember the second party, but this court laid that out in the Vereek case, V-E-R-E-E-K-E, I think that was a school district case. So until there is that antecedent wrongful conduct by the individual official, there can never be the Monell liability over and above that through the policies of the municipality. So they're still joined at the hip for purposes of the 1983 claim, and I think that fits the privity. Certainly, Patel v. City of Ferndale, which I believe is cited in our brief, 181 F. 3rd, 103, 6th Circuit, 1999, specifically has that same situation as does the McCoy v. Michigan case and the Ludwig v. Township of Van Buren case and the Bates v. Van Buren Township cases. Those are all instances of employees being in privity with the employer. The McCoy case and the Patel case, in particular, being government employees in the same Monell situation we would have here. Leaving aside, I think, because I believe things are clear on the res judicata argument, I want to step very, very briefly to Volker Feldman. I'm sorry? I just want to go back to this idea. There are all sorts of – there are different types of res judicata. When you're dealing with collateral estoppel and issues of matters that were decided, certainly the fact that you need a wrongful act of the officer to hold – to establish the Monell liability, and certainly that's relevant. But we're dealing with something a little bit different here. We're dealing with claim preclusion in the context where we're saying that you were obligated to bring every single claim that you could against these particular defendants. Do any of those cases deal with that situation where a defendant who was not a party gets the benefit of that aspect of res judicata? I don't. In candor to the court, I don't believe so, because in the cases I just cited, the government entity was indicated as a party. Well, that's the secondary suit I'm looking at, though. I will have to concede that I would have to go back and look at those on that particular point. But I believe it still applies, certainly because, like I said, the question of would the – are the parties such that their liability hinges one upon another? Even though we have the distinction in the Monell situation as to what the city can be liable for, it's still completely contingent, 100 percent, on the liability of the officer. So the city is stuck, stuck as it were, with whatever happens to the officer in the prior suit, and that's critical for allowing the res judicata to go forward. Let me ask you – this is Ron Gilman. Let me ask you, what do you make of the fact that the state trial court judge explicitly stated that any additional claims based on disputed facts were, quote, for another day and, quote, for another time and another action? Well, that was a virtual invitation for – you'll recall that before that, the attorney general had actually said, you know, perhaps they would amend. And that was an invitation by the judge at that hearing to say, make your amendment. That's what the court of appeals in Michigan, ruling on the amendment issue, which is what I was turning to next, said. You know, you had the opportunity right there, but instead you went – you didn't say anything at that hearing about wanting to amend. You didn't file any motion. Instead, you signed a stipulated order to dismiss the case, and only thereafter, after getting another attorney, did the plaintiffs decide they wanted to make a motion to amend. And as the court explained at length in the Michigan court of appeals opinion in this case, that's outside the time parameters that are allowed. That's where the Rooker-Feldman doctrine comes in. As plaintiffs – you know, plaintiffs didn't really argue that in the district court, didn't really bring that up, and we didn't have to either. They brought it up in their brief to this court, where they said plaintiffs could not litigate – this is page 41 of their brief – could not litigate or resolve their non-Bayne-Davis claims because the state court refused to permit the plaintiffs to amend their state court complaint. In his argument today, counsel said the state court that misread and misapplied MCR 2.116 I-5. What he's saying is, I want – say the Michigan courts were wrong, and I want this court to act like an appellate court over the state court. And that's exactly what the Rooker-Feldman doctrine prohibits this court from doing. And that's why the doctrine does, in fact, apply in this case. With that, I have nothing further. I'm sorry, yes? Mr. Curlew's time is up on this point. Thank you. Okay, Judge Feldman, did you want to engage further on that question? No, I think that's okay. Mr. Fedenski? Good morning, everyone. This is Assistant Attorney General John Fedenski, appearing on behalf of Lieutenant Collins of the Michigan State Police. We're prepared to rest on our briefs unless there are particular questions. Anticipating one issue, Mr. Collins was, in fact, named in both lawsuits, so we don't have the issue of privity in terms of how res judicata applies. And the one point I would like to respond to what the appellant has tried arguing here on appeal is that there is no law that recognizes this theory that res judicata should turn on this idea of a last chance to bring claims. The law is settled on the point, and what has been conceded is there was a chance to raise these claims. That was at the point at which the mandamus action was filed, and it's a bit like the Pat Benatar song, Hit Me With Your Best Shot. Piecemeal litigation is disfavored, and under res judicata, plaintiffs have exhausted their shot, and the district court should be affirmed here. If there are questions, I'm happy to entertain them. At least for me, the case is very troubling. I mean, we get mandamus petitions all the time, and they're disposed of rather quickly because of the nature of the risk. Usually, you may have a perfectly good claim to relief, but it's not mandamus. And it's somewhat problematic to have a situation where the dismissal is not on the merits. When I say merits, I mean the merits of the underlying claim. It's simply because the request is inappropriate, and then the court denies an opportunity to amend, and that's the end. That's the end of everything. There's never a decision on the merits. There's no collateral establishment. Nothing's been determined, and we say, well, you should have brought all your claims when mandamus is not a typical claim. So I'd like you to respond to that. Well, I suppose I would respond to the idea that there wasn't a merits determination. There was a merits determination. It's not as though the state court said, I don't have jurisdiction to decide this mandamus claim. The claim of mandamus was decided on the merits, and sort of putting all your eggs in one basket is something that a plaintiff does at their peril under the compulsory joinder rule. And there's a rational basis for having a compulsory joinder rule. It's to avoid piecemeal litigation and allowing these sorts of second, third, fourth bites at the apple. And there's really no logical stopping point to the argument that a last chance to raise claims is what ought to be considered, because in this case, the motion to amend wasn't brought until 20 days after the stipulated order of dismissal. And in point of fact, procedurally in Michigan, you can move for relief from judgment. You can potentially file another action years down the line. When and where is the logical stopping point for a last chance? And so under settled law, the question is, at the time of filing, what claims could and should you have brought? And in this case, it's perfectly clear that these claims could and should have been brought against Lutheran Collins in that original action. And it was decided on the merits, and therefore you can't turn back and say, oh, we goofed, we should have done more than just a mandamus claim here. What makes you, by the way, say it's a compulsory claim as opposed to a permissive claim? I thought the plaintiff said it's not only permissive. Well, in Michigan, the court rules, if you read them, actually say you've got to bring them all together. And there's a separate, more generic rule that says you can bring more than one claim at a time. But under Adair v. State of Michigan, which is cited in our brief, and under other settled law, the whole idea in Michigan is that claims ought to be brought together and resolved altogether. And that's the other point, Your Honors, is this is all out of one occurrence, one transaction. There are no additional facts that are pled with any specificity in terms of what is the underlying facts or transaction here. And so I think I may be running short on my time. If there are any thoughts you'd like to complete, if not, we'll go ahead and rest on our brief. Does it matter whether it's permissive or compulsory? I don't think so, Your Honor. In terms of what the court rules state, I think what matters is what is the rule as far as res judicata under procedure lands in the State of Michigan and how that's incorporated in federal court. And as long as it's one transaction and occurrence, which admittedly is what's here, and as long as it's permissive that these claims could have all been brought at once, those are the two essential, undisputed points. This is Judge Branch. I'm struggling a little bit with your argument that there was a merits determination. My look at the case indicates that the writ of mandamus was a particular type of remedy that could not be issued where there were disputed facts. And here there were disputed facts. He claims that you took and kept, your client took and kept his property, and the client claims not to have it. So tell me how that's a merits determination. Well, it's a merits determination in the sense that this writ of mandamus claim ought not issue, and it was dismissed with prejudice. It wasn't dismissed without prejudice for lack of jurisdiction or for some other reason. And so that makes it a merits determination, the operative language with prejudice. You're not, you're not, you can't claim that there was a determination of facts. What you can say is that there was a merits determination that mandamus would not issue because there were disputed facts, which in the end, and I think it's the thing that's troubling to us, is that no one has ever looked at the real underlying facts of this case to determine what happened to this gentleman's property, correct? Well, I don't know if I'd make that concession, Your Honor. It was, it was with prejudice, and the court... Then tell me who, tell me where those facts have been determined. Well, in a mandamus action, the trial court can order discovery. It can order any kind of relief short of granting the writ, and that didn't happen here. And so I don't know if I would entirely agree with the idea that the claim of writ of mandamus wasn't weighed and measured. It was, and it was decided with finality and with prejudice. And I think my time certainly has run. I don't want to take Mr. Bichand's time, so I think I'll have to rest with that point. Does anyone else have any further questions? Okay, we'll move on. Mr. Bichand? Now, good afternoon, panel.  I report to you on behalf of the Department of Justice. I represent Jeans Towing. I'm basically going to rest on my brief by saying that Jeans Towing was not sued in the state court. They're sued in the federal court. We were able to come to a stipulated order for dismissal with prejudice that was signed by the parties. My understanding is that the only reason I'm actually in this appeal, at this point in this appeal, is because we were the last order. So I would ask to be taken out of the appeal because it was a stipulated order for dismissal with prejudice. And I'll rest on that. Judge Strach, how much money is owed on storage for the items that Mr. Scott claims to own? Your Honor, I do not have that in front of me because what we did is we agreed to return the property, and he didn't owe us any money. So he received back any of the property that was still in storage with Jeans Towing upon the order that was agreed to between the parties. Thank you. You're welcome. Mr. Lederman, if you'd like your rebuttal for five minutes. Yes. All right. Our position is the State Trial Court's dismissal of the mandamus claim was in fact not on the merits. You have, we're all aware that you can have a dismissal with prejudice not on the merits. The statute of limitations, latches, are two examples. And when you look at it, this dismissal was very similar to that. There's no actual litigation on the merits. This is Judge Strach. Clear me up on a factual matter. Does your client concede that he received all the properties that Jeans Towing had in storage without payment of fees in that settlement with Jeans Towing? Okay. As far as I know, the answer is yes to that. Okay. Thank you. There's no appeal as to Jeans Towing, right? Yes. The only reason that Jeans Towing is in the case is the last order that the District Court issued had to do with Jeans Towing. Okay. Okay. Now, do you argue in your brief that there's no decision on the merits? I don't think we hit that. I don't think we do. Okay. I think I just became aware of that. Okay. But anyway, that, you know, so that's what I'm arguing now. All right. It is, there's a gray area here. All right. The court did review the mandamus, the law of mandamus in Michigan. All right. The court did that. All right. But they didn't apply it to the facts except to say there's a factual dispute. Okay. It's not like a motion for summary judgment where the court is asking are there genuine issues of material factors. It's not like that at all. All right. But on the other hand, it's not precisely like other non-merits positions in the fact that the court is taking a standard, you know, absence of factual disputes. Okay. Which is, you know, I have to say it's a gray area here. I believe now that it's more on the non-merit side than the merits. What difference does all that make if, in fact, under ratio to counter principle, you had to bring all claims relating to this set of facts? You could have done it and you didn't. What difference does it make whether it was on the merits or not? Aren't you bound by the fact that you didn't bring all your claims when you should? Well, it is, you know, it doesn't, let's put it this way, it doesn't undo all the damage, but it puts us in a different position. There are three common law rejudicata requirements. Okay. And we've been arguing mainly the third, whether the plaintiffs could have brought the claims in the state court. Okay. If we don't have a dismissal on the merits, okay, then it puts us into a different category in another area where, you know, a party asserting rejudicata has to meet all three requirements. All right. If they don't meet, even if they meet the third requirement that we've been arguing about, if they don't meet the first requirement, a final decision on the merits, okay, it puts us in another gray area. Yes, Michigan does have broad rejudicata and has had that since 1980, since the GOES, the Monroe Auto Equipment case. All right. That's well known. All right. But we're in an area here where, you know, the requirements are crossing and clashing. Okay. Assuming that plaintiffs could have brought all the laws of the state court. Okay. We are not asking this court to serve as an appellate court for the state courts. What we're asking for this court to do is to give us a forum to litigate our other claims. Counselor, this is Judge Strange. I have one question. Was there an appeal from the Michigan Court of Appeals to the Michigan Supreme Court on this issue? No, there wasn't. Was that not a forum opportunity to resolve the questions that you're raising here? It was a very limited opportunity. As you probably are aware, the Michigan Supreme Court only takes about 2% of the applications for leave presented to us. Okay. So it's a very, very long shot. Okay. Is the remaining property at issue, is all that's left other than any damages, the $180,000, is that what's at issue? That is. Okay. And is there any pending charge against the officer internally, or has that been investigated by the police department? I have not heard of either of those. I've not seen any information on either of those. I've not seen any documents on either of those. Nor have you filed that kind of complaint or charge internally? If there was, it certainly hasn't come to my attention in all the documents that I've read. I was not on the case back then, but in all the documents that I've read, I've not seen any reference to that. Your Honors, Mr. Lederman's time is up. Mr. Lederman, I've got another question. I think maybe I saw some vague reference that there might have been some conduct after the state case was dismissed. I don't know if I understood correctly. Are you alleging that there was subsequent conduct that couldn't have been made part of that suit? There's a vague paragraph that defendants have referred to. There is a reference to some conduct occurring between the time of the dismissal of the state court complaint and the beginning of the federal court complaint. I've looked into that. As far as I can tell, I have not been able to find solid evidence of that one way or another in terms of whether that's just a continuation of the damages situation. In other words, what I'm saying is that I have not been able to find anything to indicate new separate acts of conduct as opposed to simply a continuing wrong here. Thank you. I appreciate that. May I ask one other question of Mr. Curlew? Yes, ma'am. Mr. Curlew, to your knowledge, is there any internal investigation or other proceedings against Officer Reif? Not to my knowledge, there's never been, no. Remember, this is kind of a joint thing with a bunch of municipalities being overseen by the Michigan State Police. The officers of the various communities, I believe, are kind of foot soldiers. I don't know that any of the individual, and perhaps Mr. Fedenski could address this, I don't know that any of the individual municipal departments even keep any of the materials that are gathered, or Holly would give you that up, between the departments, or how that works. Mr. Fedenski, I probably asked the wrong person the question. Is there any internal investigation or other action regarding the claims in this lawsuit? Not that I'm aware of, Your Honor. Thank you. Okay, anything else from the judges?  Okay, the case will be submitted. All right.